4. A court of equity will not reform a void instrument. **Held,** that the instrument which is sought to be reformed in this suit is not void.                    P. 686

5. In this jurisdiction, a mortgage on real estate is simply security for the payment of a debt, leaving the legal title to the mortgaged premises in the mortgagor.          P. 687

6. (a) A mortgagee, in a mortgage deed which contains a power of sale on default, cannot become a purchaser at a sale which he, himself, makes under the power, either directly or through the agency of a third person, unless expressly permitted by the terms of the instrument.

(b) A mortgagee's purchase at his own foreclosure sale, when not authorized, is voidable only, giving to the mortgagor an election either to ratify and affirm the sale or to avoid it and have it set aside.

(c) The mortgagor's option must be exercised within a reasonable time and before the property has passed into the hands of an innocent purchaser for value and without notice.
P. 687

7. (a) In a suit for reformation, the complaint must make it appear that complainant is pursuing his remedy in good time after discovery of the injury; otherwise, the same is demurrable.

(b) Where a complaint is silent as to the time of discovery of a mistake, it must be taken to have been known to all parties interested from the time the instrument was made.

(c) An objection to the introduction of any evidence, made at the beginning of the trial, on the ground that the complaint does not state a cause of action, is in the nature of a demurrer ore tenus.

(d) A complaint and reply are considered together in determining a demurrer ore tenus directed to the complaint, where the reply alleges matters omitted by, and which should have been stated in, the complaint, because the irregularity of pleading improper matters in the reply is waived by accepting it and in refusing to move to strike it out, or otherwise attacking it.                    P. 688

Cleveland v. Bateman, 21 N. M. 675.

8. The tenor of the instrument which the parties seek to have decreed by the court, in substitution of the agreement as reduced to writing, must appear upon the face of the complaint. P. 691

9. A mortgagee in making a conveyance under a power in a mortgage should not execute the conveyance in his own name but in that of his principal, as the latter's attorney in fact. P. 692

10 (a) All the essential requisites of the power contained in a mortgage must be strictly complied with.

(b) Recitals, contained in a deed executed by virtue of a power of sale contained in a mortgage, that proper notice of sale was given are prima facie proof of such facts as against the parties and privies to the instrument containing the power, and the burden of overcoming such proof rests upon the party asserting the contrary. P. 692

## ON REHEARING.

11. In this jurisdiction, a power of sale contained in a real estate mortgage is coupled with an interest, hence the power is not revoked by the death of the mortgagor, notwithstanding the fact that such a mortgage merely gives the mortgagee a lien on the property or is a mere security for the debt. P. 697

Appeal from District Court, Chaves County; John T. McClure, Judge.

Action by George P. Cleveland, as next friend of Helen Monroe Doss, Henry W. Doss, Clevie Doss, and Kathleen Doss, minors, and others, against U. S. Bateman. From a judgment for plaintiffs, defendant appeals. Affirmed.

U. S. BATEMAN of Roswell, pro se.

This is not a proper case for reformation.

2 Warville on Vendors, § 783, page 925; see note 28 cited by the last authority; 42 Cent. Digest, col. 1054, § 20, Reformation of Instruments, citing N. C., Ore. and

Wis.; Hutchinson v. Huggins, 59 Ill. 29; 24 Am. & Eng.
Enc. of Law (2d ed.) p. 657; McRary v. Williams (Ala.
1900), 28 So. 695, on page 696 in the last of col. 2;
Griffin v. Durfee (Ind. 1902), 64 N. E. 237, at the middle
of col. 1, on page 239, where the court says a sheriff's
deed cannot be reformed, "because there is but one party
concerned in the making of such deed, and consequently·
there can be no mutual mistake"; Gardner v. Knight·
(Ala. 1899), 27 So. 299, at page 301, col. 1; 34 Cyc. 974.

A mortgagee cannot become purchaser at his own sale.
2 Jones Mtgs. sec. 1876; 28 Am. & Eng. Enc. Law (2d
ed.) 818; Michoud v. Girod, How. 503, 11 L. Ed. 1076,
at page 1099; Wormley v. Wormley, 8 Wheat. 421; Alex-
ander v. Hill (Ala. 1890), 7 So. 238; Palmer v. Young,
96 Ga. 246, 22 S. E. 928, at the middle of col. 2, page
929, 51 Am. St. Rep. 136; Haggart v. Wilezinski, 143·
Fed. 22, at the middle of page 27; 2 Wiltisie on Mortgage·
Foreclosure, at § 942, citing Hall v. Bliss, 118 Mass. 554,
19 Am. St. Rep. 426.

Proof does not support findings with reference to notice·
of sale.
Nash v. Northwestern Land Co. (Supreme Court of S.·
D. 1906), 108 N. W. 792; Seccombe v. Roe (Cal. 1913),
133 Pac. 507; 27 Cyc. 1495; Bigler v. Waller, 81 U. S.
(14 Wall. 302) 297, 20 Law Ed. 891, at the top of col. 1,
on page 893 of 20 Law Ed.; Shillaber v. Robinson, 97 U.
S. 77, 24 Law Ed. 967, at page 969; 35 Cent. Digest, on·
Mortgages, col. 2 on page 1807, § 1122, citing Enochs v.
Miller, 60 Miss. 19; *Fowle v. Merrill,* 92 Mass. (10 Allen)
350; 2 Jones on Mortgages, § 1830.

For effect of recitals see:
Mortgage deed in question, Tr. 76; Savings & Loan
Soc. v. Deering (Cal. 1885), 5 Pac. 353, page 355; *Tyler
v. Herring,* 67 Miss. 169, 6 So. 840, at the middle of col.
1 on page 841; Hebert v. Bulte (Mich. 1880), 4 N. W.
215.

Mortgage passes legal title.

Cleveland v. Bateman, 21 N. M. 675.

1 Jones Mtgs. sec. 11; 20 A. & E. Enc. L. 977; sec. 2871, C. L. 1897; sec. 2365, C. L. 1897.

A defective foreclosure operates as equitable assignment only.

Morse v. Byam, 55 Mich. 594, 22 N. W. 54; Taylor v. Agricultural & Mechanical Ass'n, 68 Ala. 229; Morsely. v. Rambo (Ga. 1899), 32 So. 638, at the bottom of col. 1 on page 641; 35 Cent. Digest, Mortgages, col. 807, § 1122; 2 Jones on Mortgages, § 1152, page 119; Rigney v. De Graw, 100 Fed. 213, but this case is overruled on a statute of Missouri in 107 Fed. 545; *Blessett v. Turcotte* (N. D. 1912), 136 N. W. 945, near top of col. 2 on page 950; Nash v. Northwestern Land Co. (N. D. 1906), 108 N. W. 792; Hussey v. Hill (N. C. 1897), 26 S. E. 919, at the lower part of col. 1 on page 920; 2 Jones on Mortgages, § 1678; Salvage v. Haydock, 44 Atl. 696, 68 N. H. 484; Gottieb v. City of New York, 112 N. Y. S. 545.

ED. S. GIBBANY of Roswell, for appellees.

Findings will not be disturbed if based on substantial evidence.

Hancock v. Beasley, 14 N. M. 239, 91 Pac. 735; Candelaria v. Miera, 13 N. M. 360, 84 Pac. 1020; Ortiz v. Bank, 12 N. M. 510, 78 Pac. 527; Marquez v. Land Grant Co., 12 N. M. 445, 78 Pac. 40; Carpenter v. Lindauer, 12 N. M. 388, 78 Pac. 57; Rush v. Fletcher, 11 N. M. 555, 70 Pac. 559; Romero v. Coleman, 11 N. M. 533, 70 Pac. 550; Gale & Farr v. Salis, 9 N. M. 211, 66 Pac. 520.

Court had power to reform the deed.

Miss. Valley Trust Co. v. McDonald, 48 S. W. 483; Spaulding Mfg. Co. v. Godbold, 29 L. R. A. (N. S.) 282, 121 S. W. 1063.

Scrivener's mistake was that of both parties.

20 A. & E. Enc. L. 823; Rice v. Hall, 42 S. W. 99; Rogers v. Atkinson, 1 Ga. 12; Nowlin v. Brown, 18 Misc. N. Y. 395; Hebler v. Brown, 18 Misc. N. Y. 395; Linton v. Unexcelled Fireworks Co., 128 N. Y. 672; Born v. Schrenkelsen, 118 N. Y. 55.

Court puts self in position of parties, in interpreting a writing.

Grass v. Scruggs, 115 Ala. 258; Saunders v. Clark, 29 Cal. 299; Union Pac. Ry. Co. v. Anderson, 11 Colo. 293; Patterson v. Camden, 25 Mo. 13; Belch v. Miller, 32 Mo. App. 387.

## OPINION OF THE COURT.

HANNA, J.—This is a suit in equity brought by plaintiffs against defendants to reform an instrument purporting to be a deed, and to quiet title to certain lots described therein. The complaint alleges that the plaintiffs are the owners and entitled to the possession of certain lots in the Ovard Addition to the city of Roswell, which were acquired by mesne conveyance from J. S. Williamson, their common grantor, who acquired title thereto by virtue of a sale made in pursuance of a power of sale contained in a mortgage deed executed on May 26, 1891, by George T. Ovard and D. A. Ovard, his wife, to the Pecos Valley Mercantile Company, a partnership composed of J. S. Williamson, J. J. Sanders, and Charles Wilson; that said Williamson, acting for himself and the members of said partnership, duly and legally complied with the conditions of said mortgage deed, and the property was sold and a conveyance thereof attempted by deed; that, by mistake of the scrivener, the said deed was so drawn that it conveyed only the right, title, and interest of J. S. Williamson, J. J. Sanders, and Charles Wilson, mortgagees, when in truth and in fact, it was the intention of the members of said firm and their instruction to said scrivener, as well as the purpose and object of the advertisement and sale, to convey all the right, title, and interest of the mortgagors, George T. Ovard and D. A. Ovard, his wife, to said Williamson, who was the highest and best bidder at said sale; that plaintiffs purchased said lots without knowledge of said mistake in said deed; that plaintiffs are informed and believe that the defendants make some claim of title to said premises, adverse to the estate of plaintiffs. Plaintiffs pray for reformation

of said deed and to quiet title to the lands therein mentioned. ·

The answer of defendants denied generally all of the allegations made in the complaint, and alleged, by way of new matter, that the cause of action of plaintiffs was discovered and known by plaintiffs more than four years before the filing of the original complaint herein; that on May 26, 1891, said Ovard and wife made, acknowledged, and delivered to and in favor of the Pecos Valley Mercantile Company, the mortgage, to secure the payment of $559.13, payable 18 months after date; that said mortgage deed not only fails to convey any real estate therein mentioned, but otherwise is fatally defective upon its face; that the validity of said mortgage deed was drawn in question in a certain cause, numbered 570, in the district court for Chaves county, which cause was between different parties than those mentioned in the case at bar, and was held ineffective as an instrument of conveyance; that the rights of plaintiffs are based entirely upon said mortgage; that the decision of said court in said cause was generally considered and discussed among real estate agents and brokers then engaged in business at Roswell, and was generally known to the public; that defendants are the owners of said estate and entitled to the possession thereof, deriving title thereto by virtue of conveyances made and executed by the heirs at law of said Ovard and wife; that such conveyances were executed in the years 1909 and 1911; that defendant, Bateman, was in the actual possession of said lands long before the institution of this action, and has placed valuable improvements on most of said lots; that he has paid the taxes assessed thereon and had no knowledge that plaintiffs claimed that a mistake existed in said deed, under which plaintiffs claim, until the institution of this suit; that the mistake in said deed appeared upon its face and was of record for more than 17 years prior to the institution of this suit, and until this time plaintiffs have taken no action with reference thereto; that 16 other lots were included in said mortgage deed, and are now, and have been for a long time previous to the institution of this

suit, in the peaceable possession of persons other than the parties to this suit.

The reply alleged that all the property mentioned in the complaint was purchased by plaintiffs for valuable con-siderations, without knowledge of the mistake in the deed, which is sought to be reformed, and pleads specific facts as to when each plaintiff obtained knowledge of said mis-take; that the Doss children are minors, and that the al-legations of laches on the part of the plaintiffs cannot apply to them for that reason; that the heirs of said Ovards have never been in possession of said lands, and that the interest of said Ovards in said premises was fore-closed as alleged in the complaint, and therefore the de-fendants acquired nothing by virtue of the deeds made by the heirs of the Ovards, executed subsequent to the foreclosure of said mortgage.

The case came on to be heard before the court, and the defendant, U. S. Bateman, objected to the introduction of any evidence on the ground that the complaint failed to state facts sufficient to constitute a cause of action. The objection was overruled by the court. Evidence on the part of the plaintiffs was then introduced, which tended to support the allegations of the complaint as well as to prove that the mortgagor, George T. Ovard, was present at the sale and acquiesced therein, and that J. S. Williamson was the sole owner of the note and mortgage at the time of the foreclosure proceedings. The defend-ant introduced evidence tending to prove title to the prem-ises in himself, provided his grantors had title. The court made certain findings of law and fact and rendered judg-ment for appellees, from which judgment appellant has prosecuted this appeal.

[1] Paragraph one of the first assignment of error is based upon the general objection that the complaint failed to state facts sufficient to constitute a cause of action, and 17 propositions are declared thereunder. Many of these propositions are simply assertions as distinguished from argued propositions. The rule adopted by this court is that such objections must definitely point out the alleged error; and, when that is not done, the objections are con-

sidered as raised for the first time on appeal, and conse-
quently the—

"complaint will be liberally construed in order to uphold the
judgment, and, if it contains allegations from which every
fact necessary to maintain the action may be inferred, it
will be sustained." State Bank of Commerce v. Western
Union Tel. Co., 19 N. M. 211, 142 Pac. 156, L. R. A. 1915A, 120.

The appellant states in his brief that the propositions
argued and asserted in paragraph one of the first assign-
ment are argued in the second paragraph of that assign-
ment, so we shall not consider them under the first part
of the first assignment.

[2] The first question which we are called upon to
consider is that the complaint is insufficient because it ap-
pears, from the face thereof, that the mistake was of one
party only, and that a court of equity has no power to
grant reformation under such circumstances. The com-
plaint alleges that—

"by mistake of the scrivener, the said deed was so drawn as
to convey the right, title, and interest in said lots of the
mortgages. * * * While, in truth and in fact, it was the in-
tention of said members of said firm and their instructions
to said scrivener and the purpose of the said advertisement
and sale to convey all the right, title, and interest of the
mortgagees (mortgagors), George T. Ovard and D. A. Ovard."

The complaint also alleges that J. S. Williamson, one
of the partners, acting for himself and the partnership,
sold the property under the power contained in the mort-
gage deed after having "duly and legally complied" with
the terms of the power of sale. In this connection the law
seems well settled, and it is thus stated in Cyc.:

"Whenever an instrument is drawn with the intention of
carrying into execution an agreement previously made, but
which by mistake of the draftsman or scrivener, either as to
law or fact, does not fulfill the intention, but violates it, there
is ground to correct the mistake by reforming the instru-
ment and enforcing a specific performance of the original
contract according to the real intention of the parties." 34
Cyc. 910, 911.

Mr. Pomeroy deals with the question in the following
language:

Cleveland v. Bateman, 21 N. M. 675.

. "Equity has jurisdiction to reform written instruments in but two well-defined cases: (1) Where there is a mutual mistake; that is, where there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not ·express what was really intended by the parties thereto; and (2) where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties." 4 Pom. Eq..Juris. § 1376; 24 Am. & Eng. Enc. of Law (2d ed.) 648.

The contract or agreement which is attempted to be ·corrected in the case at bar is one between the mortgagors, acting through their attorney in fact, the Pecos Valley Mercantile Company, and J. S. Williamson, purchaser. In this transaction, the Pecos Valley Mercantile Company was acting through one of its partners, J. S. Williamson. The alleged mistake is based upon the failure of the scrivener to carry out the instructions of J. S. Williamson, as well as the other members of said firm. It is alleged that the deed was executed under the power ·of sale contained in the mortgage. Manifestly, the facts of the case, as developed at the trial, are sufficient to make out a case of mutual mistake, but the vital question, however, is whether the complaint states facts sufficient to make out such a case. Had the complaint alleged that J. S. Williamson was acting as the agent or the attorney in fact of the mortgagors and mortgagee in the matter of the preparation of said alleged deed, no doubt the complaint would be sufficient. However, we are of the opinion that the complaint, although it is far from being a model, alleges facts sufficient to make out a case of mutual mistake. The Pecos Valley Mercantile Company, a partnership, was constituted the attorney in fact of the mortgagors. It could only act through one of its partners, attorneys, or agents. The power contained in the mortgage authorized it to act through an agent or attorney. When the substance of the complaint is considered, it states facts sufficient to constitute a mutual mistake, as distinguished from a mistake of one party only. It shows that the agreement between the mortgagors and the mortgagee was that in a certain event the latter, acting by itself or through its agent or attorney, should sell the prem-

ises and execute good and sufficient deeds therefor in behalf of the mortgagors; that, in pursuance of the agreement, J. S. Williamson, one of the partners, attempted to carry out the terms of that agreement, but the intention of the parties was not carried out because of a mistake of the scrivener, due to his failure to observe the instructions of J. S. Williamson, who was then acting for himself as well as the partnership, the attorney in fact of the mortgagors. Williamson was the purchaser at the foreclosure sale, and the agent of the partnership, the attorney in fact. The mistake was the mistake of Williamson, acting by his servant, the scrivener. It cannot be said with any degree of logic that Williamson, purchaser, made a mistake, but Williamson, agent for the attorney in fact of the mortgagor, made no mistake. The mistake of Williamson was the mistake of the mortgagor, the mortgagee, and the purchaser. He was acting for himself as purchaser and for the other parties as agent. Due to his mistake, the agreement of the parties was not properly reduced to writing because the alleged deed conveyed only the interest of the mortgagee, rather than the interest of the mortgagors as it existed at the time of the execution of the mortgage. The writing did not express the real agreement of the parties, and the facts show a proper case for equitable relief in that regard. This holding follows the doctrine laid down in First National Bank of Elida v. Hartford Fire Insurance Company, etc., 17 N. M. 334, 127 Pac. 1115, where the court said:

"The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended."

[3] The appellant contends that the complaint is defective because it fails to allege a demand upon defendant for correction of the mistake and a refusal thereof. The general rule of pleading in this regard is that usually the complaint should allege such demand and refusal. But the rule is subject to certain exceptions, one of which is that no such demand and refusal need be alleged where the relief by reformation is simply incidental to other re--

.lief demanded. 18 Enl. P. & P. pp. 839, 840; 34 Cyc.
.944, 973. California holds that no demand is necessary
·in those cases wherein the demand is not on integral part
of the cause of action. Danielson v. Neal, 164 Cal. 748,
130 Pac. 716. Illinois holds that a failure to allege the
-demand and refusal casts the payment of costs upon the
defaulting party, notwithstanding that the defaulting
party may have succeeded in obtaining. the relief sought.
·Braithwaite v. Henneberry, 222 Ill. 50, 56, 78 N. E. 34.
·Indiana and Alabama hold that, where relief by way of
·reformation is incidental to the main purpose of the suit,
no such allegation of demand and refusal is necessary.
·Weathers v. Hill, 92 Ala. 492, 9 South. 412; Nichols &
Shepard Co. v. Berning, 37 Ind. App. 109, 114, 76 N. E.
776, and numerous other cases therein cited. The case
at bar falls within the last-mentioned exception to the
general rule, the main purpose of this action being to quiet
title to the real estate, and therefore the complaint is suf-
ficient so far as that particular question is concerned.

[4] The appellant argues that the alleged deed is
void, because the partnership could not legally hold or
convey real estate, and that equity will not reform a void
instrument. The doctrine for which appellant contends
is found in 24 Amer. & Eng. Ency. of Law (2d ed.) pp.
.653, 657. A case which aptly illustrates that doctrine is
that of Brazoria County v. Youngstown Bridge Co., 80
Fed. 10, 25 C. C. A. 306. There, the plaintiff sought to
have reformed a contract made between it and the de-
fendant county, by which the former agreed to construct
certain bridges in consideration of a sum of money pay-
able in bonds of the county. The court held that the con-
tract was void in its inception because the county had no
power to so. contract, and therefore the court would not
do a vain and useless thing by reforming an instrument,
which, when reformed, would be without legal effect. The
case at bar does not fall within those principles. Here,
the parties had power to do the thing upon which their
minds met. They agree to do a legal thing, but their
agreement was not properly reduced to writing because of

a mistake of a scrivener in failing to observe the instruction of all the parties.

[5] In this connection, the question is presented as to the legal effect of the mortgage. The mortgage named the partnership by name and the partners who composed it. Appellant argues that the adoption of the common-law rule of practice and decision, when considered with section 571 of the Code of 1915, which provides that the mortgagor shall have the right of possession of mortgaged real estate, in the absence of stipulation to the contrary, invokes and adopts the common-law rule with reference to the passing of title to the mortgagee by a mortgage on real estate. It has been held in this jurisdiction, and is now the settled law, that a mortgage of real estate is simply security for the payment of a debt, leaving the legal title in the mortgagor. Stearns-Roger Co. v. Aztec Gold M. & M. Co., 14 N. M. 300, 327, 330, 93 Pac. 706. We are satisfied that the doctrine announced in that case is correct.

[6] (a) Appellant also argues that the complaint is defective because it appears therefrom that the mortgagee purchased the property at his own sale. Unless the instrument confers upon the mortgagee the power to purchase at the sale, the general rule is that he cannot become the purchaser at the sale which he, himself, makes under the power. 1 Devlin on Deeds, § 417; 1 Wiltsie on Mortgage Foreclosure (3d ed.) § 610; 28 Am. & Eng. Ency. of Law (2d ed.) 816; 27 Cyc. 1483; 2 Jones on Mtgs. § 1876.

(b) But such sales are voidable only, giving to the mortgagor an election either to ratify and affirm the sale, or disaffirm it by seeking to set it aside. Authorities, supra.

(c) The election must be exercised within a reasonable time and before the property passes into the hands of an innocent purchaser for value and without notice. Authorities, supra. Such a sale being to all intents and purposes valid, unless avoided by the mortgagor with promptness, the burden of pleading and proving that the sale was void rests upon the defendant in cases like that at bar. The court can draw no inference that the sale was

void because of the allegations of the complaint, showing that the mortgagee purchased the property at the foreclosure sale. Therefore the complaint is not defective for the reason assigned.

[7] (a) The appellant asserts that the complaint is defective because it fails to account for a delay of about 17 years in the bringing of this suit for reformation. The general principles applicable to this contention are thus stated in Enc. Pl. & Pr. and Cyc.:

"In a suit for the reformation of a contract, the bill or complaint must make it appear that the complainant is pursuing his remedy in good time after the discovery of the injury, and, if his allegations disclose that his claim is a stale one, or that, after the discovery of his right to relief, he has been guilty of long acquiescence and unnecessary and unexplained delay for an unreasonable length of time before asking relief, the bill or complaint is demurrable." 18 Enc. P. & P. 825, 826.

"It is a well-settled rule that a party who discovers a mistake in a deed or other instrument must use due diligence in seeking equitable aid, and a bill or complaint, which shows that the plaintiff, after the discovery of the mistake, has confirmed the contract or has been guilty of unreasonable delay, is without equity." Id. 829.

(b) Where the complaint is silent as to the time of discovery, it must be taken to have been known to all parties interested from the time the instrument was made. 34 Cyc. 976. The proposition was first raised by objecting to the introduction of evidence at the trial. The answer, after denying, generally, all the allegations of the complaint, alleged that, if a cause of action for reformation ever existed, it was known to and discovered by plaintiffs and their respective grantors long before the institution of this suit, and more than four years prior to the date of the filing of the original complaint. The reply alleged facts, which, if true, accounted for the alleged delay in bringing the suit.

(c) An objection to the introduction of any evidence, made at the trial, on the ground that the complaint fails to state a cause of action, is in the nature of a demurrer ore tenus. 1 Sutherland Code Pl. Pr. & Forms, § 305; Rothe v. Rothe, 31 Wis. 572; Jenks v. Allen, 151 Wis, 625, 139 N. W. 433; Chism v. Smith, 210 N. Y. 198, 104

N. E. 131; Phillips v. Carver, 99 Wis. 561, 75 N. W. 432; Abbott v. Easton, 195 N. Y. 372, 88 N. E. 572; Hays v. Lewis, 17 Wis. 210; C. C. Belknap Glass Co. v. Kelleher, 72 Wash. 529, 130 Pac. 1123; Stutsman County v. Mansfield, 5 Dak, 78, 37 N. W. 304.

The delay in bringing the suit appears as a matter of fact upon the face of the complaint. Instead of demurring to the complaint, appellant answered and alleged the insufficiency thereof because of the delay, which manifestly raised a question of law and was not the proper office of an answer. The appellee then alleged facts in reply, excusing the delay if those facts were true, on the theory, presumably, that such facts constituted a reply to new matter alleged in the answer. It will thus be seen that both parties misconceived the law with reference to the office of answers and replies, which accounts for the peculiar condition with which we are confronted. In Pomeroy's Code Remedies, at section 470, it is said:

"A statement in the reply, however, of a fact which ought to have been alleged in the complaint or petition, is not sufficient and does not cure the defect."

The author cites the case of Webb v. Bidwell, 15 Minn. 479 (Gil. 394), to support the doctrine. In that case, the plaintiff alleged in the form of a conclusion of law the invalidity of his title. Defendant answered and the plaintiff then replied, alleging facts showing the invalidity of his title as purchaser. At the trial, the defendant moved for judgment on the pleadings. The court held that the omission in the complaint was not cured by pleading facts, concerning the invalidity of plaintiff's title, in the reply. In 18 Pl. & Pr. 707, it is said that "where the complaint is defective or does not contain facts sufficient to constitute a cause of action, a reply cannot cure it by supplying the necessary allegations" which is supported by the cases of Potts v. Hartman, 101 Ind. 359, 363; Webb v. Bidwell, supra; McMahill v. Jenkins, 69 Mo. App. 279, where the court said that a complaint cannot be amended by a reply; Durbin v. Fisk, 16 Ohio St. 533, 538; and Mohney v. Reed, 40 Mo. App. 99. In Deeves v. Metropolitan Realty Co. (Com. Pl.) 41 N. Y.

Supp. 647, the complaint alleged that plaintiff duly performed all the conditions of the contract, furnished all the materials, and the work which plaintiff was to do was finished and fully completed in accordance with the contract. The answer alleged that the work was not performed until a considerable time after the expiration of the contract time. The reply apparently alleged facts curing the defect of which defendant complained. The court said:

"A case in point is Raplee v. Wilkin (Jan. 1878) 5 N. Y. Wkly. Dig. 560. It was therein held that a plaintiff's pleadings are to be taken together, and that, if, together, 'they state facts sufficient to constitute a cause of action, the suit may be maintained, although the complaint alone may not be sufficient. The court said: 'Although the complaint may not be sufficient alone, and the reply is irregular, yet the irregularity having been waived by the defendant, in accepting it and not moving to strike it out, the pleadings are to be taken together; and together they presented a state of facts upon which the plaintiff was entitled to recover.' I shall overrule the general objection to plaintiff's recovery in this action, on the authority of the case last cited; and it would seem that the doctrine therein advanced, of construing the pleadings as a whole, is in the plain interest of substantial justice."

In Denver & R. G. Co. v. Cahill, 8 Colo. App. 158, 45 Pac. 285, the complaint omitted to allege that the plaintiff was the owner of the property which was an essential allegation in that case. Defendant answered and plaintiff replied, incorporating therein an allegation of ownership of the property. No attack was made on the reply. The court remarked on the doctrine that, where the averments in a replication constitute a departure, the objection must be taken before the trial, or it is waived. It then declared that in principle there is no distinction between that doctrine and a case where the reply does not contain allegations of departure, but matters which supply omissions in the complaint, and said:

"In either case, the cause of action is to be found in the complaint and replication together, and a defendant who has failed to make his objection within the proper time is not prejudiced in any greater degree, where the replication supplies some statement which was wanting in the complaint than where the new allegation is a substitution for something which the complaint contained."

Cleveland v. Bateman, 21 N. M. 675.

'The doctrine of the last-mentioned case is approved in Water Supply & Storage Co. v. Larimer & Weld Reservoir Co., 25 Colo. 87, 53 Pac. 386, and Johnson v. Cummings, 12 Colo. App. 17, 55 Pac. 269. In the last-mentioned case, the court said that the omission in the complaint is supplied in the replication.

"So that, combining the two pleadings, a complete cause of action is set forth. The rules of pleading require the entire cause of action to be stated in the complaint, and a necessary allegation cannot properly appear for the first time in the replication. But the replication was not met by any objection, and the irregularity was therefore waived."

In the case at bar, the complaint was fatally defective because of the omission therein of allegations of fact showing that plaintiffs were pursuing their remedy in good time. But defendant did not attack the reply, which alleged matters curing the omission of the complaint, but attacked, at the trial, the right of the plaintiffs to maintain their suit because of the alleged insufficiency of the complaint. Under such circumstances, the appellant waived the irregularity of the allegation of curative matter in the reply. Having waived the irregularity, the plaintiff's cause of action is tested by the complaint and reply, which are sufficient to withstand the attack made by the demurrer ore tenus.

[8] Appellant insists that the complaint is defective because it fails to show the tenor of the instrument which the plaintiffs seek to have established by decree of the court. The complaint must show in terms what the instrument ought to be in order to express the real agreement of the parties, and it is not generally sufficient to allege it was the intention of the parties to make an instrument that would accomplish a certain object, and ask the court to make an instrument that will accomplish that object. 18 Enc. Pleading & Practice, 824.

"It should appear, from the allegations in the bill seeking a reformation of the instrument, what the real agreement was, what the agreement as reduced to writing was, and wherein the writing fails to embody the real agreement." 34 Cyc. 972.

The complaint is somewhat indefinite on this point, but the court and parties were advised by it that the plaintiffs sought to have corrected the words "the right, title, and interest of the mortgagees" by striking out those words and inserting in lieu thereof, the words "the right, title, and interest of the mortgagors."

[9] Apparently, the complaint did not attempt to add new parties to the deed. The mortgagee, the Pecos Valley Mercantile Company, was constituted the attorney in fact of the mortgagors, by the power contained in the mortgage. J. S. Williamson, one of the partners of that partnership, acted for the partnership in the execution of the power of sale and in the matter of conveying the premises. The general doctrine of law is that the mortgagee should not execute the deed in his own name, but in the name of the mortgagor, as the latter's attorney in fact (27 Cyc. 1495), because the deed should be executed in the name of the person possessing the legal title. 1 Devlin on Deeds, § 421. It is unnecessary for us to decide whether the instrument in the case at bar can be held to be the deed of the principal, because the question is not presented by the parties under this particulaar assignment. There are cases, however, holding that a deed executed by a mortgagee under power contained in the mortgage is sufficient to show an intention of the grantor to convey in behalf of the mortgagor. Payton v. McPhaul, 128 Ga. 510, 58 S. E. 50, 11 Ann. Cas. 163, 165.

[10] (a) Under assignment No. 13, the appellant asserts that the proof does not support the finding that the notices required by law and by the terms of the mortgage were posted. Appellant, under this particular assignment, does·not analyze the evidence, nor does he attempt to point out wherein the evidence is insufficient in that regard. For lack of argument the assignment is waived, but about the same question is raised under the fourteenth assignment where the appellant claims that the court should have found that the notices of sale were not posted or published as required ·by the terms· of the mortgage. The assignment proceeds upon the theory that the recitations in the deed from the Pecos Valley Mercantile Com-

pany to Williamson do not show the giving of proper notices and that the proof justified a finding that no proper notices had been given.

The mortgage provided that, in case of default in the payment of the principal and interest of the note when the same became due, the mortgagee, its attorney or agent, was authorized to take possession of the premises and sell the same after giving notice by six handbills posted at public places in the county of Chaves, at least 20 days prior to the time of sale, or by notices published in some newspaper printed in the county of Chaves, at least 20 days prior to the time of sale. The deed from the mortgagee to Williamson recited the following facts:

"Whereas, George T. Ovard and wife, D. A. Ovard, of Chaves county and territory of New Mexico, did, by a certain mortgage deed, dated the 26th day of May, A. D. 1891, which said deed was duly recorded on same date in the office of the probate clerk of said county and territory, in Book B, pages 55, 56, of mortgage deeds, convey to the said parties of the first part all the premises hereinafter described, to secure the payment of one certain promissory note for $559.13 in said deed particularly mentioned, and upon certain conditions in said mortgage deed particularly described; and whereas, default has been made in the payment of the said note, the said premises were, by the said parties of the first part, duly advertised for public sale, at the front door of the courthouse in the town of Roswell, in the county of Chaves and territory of New Mexico, on the 28th day of November, A. D. 1892, in the manner prescribed by said mortgage deed, and were, after giving 20 days' notice, at the place last mentioned aforesaid, on the 24th day of December, A. D. 1892, in pursuance of said notice, sold at public sale, and at said sale, the said parties of the second part were the highest and best bidders, and bid for the said lots or parcels of land, hereinafter named, the sum of $678."

The appellant insists that the recitations in the deed "show that only one notice was published, that at the courthouse door on November 28th." The recitations are subject to no such construction. What is meant by the recitations is that the advertisement was made on November 28th in the manner prescribed by the mortgage, which was 20 days prior to the sale.

The second proposition in the assignment is likewise without merit. It is a general and well-established doc-

trine of law that the power of sale in a mortgage must be strictly complied with. 2 Jones on Mtgs. § 1822; 27 Cyc. 1449, 1465, 1466; 2. Perry on Trusts (2d ed.) §§ 602, 783; Johnson v. Johnson, 27 S. C. 309, 3 S. E. 606, 13 Am. St. Rep. 636; Atkins v. Crumpler, 118 N. C. 532, 24 S. E. 367; Hurd v. Case, 32 Ill. 45, 83 Am. Dec. 249; Sears v. Livermore, 17 Iowa, 297, 85 Am. Dec. 564; Campbell v. Tagge, 30 Iowa, 307; Ford v. Nesbitt, 72 Ark. 267, 79 N. W. 793. In 27 Cyc. 1474, it is said that the provisions in a mortgage requiring the posting of notices of sale must be strictly complied with. In Shillaber v. Robinson, 97 U. S. 68, 77, 24 L. Ed. 967, the court said that it was too well established to admit of controversy that a sale under power, not in strict compliance with the terms of the power in the matter of giving notice of sale was void. The reason for the rule is apparent. The exercise of the power is entirely ex parte. The creditor is an interested trustee for his debtor, as well as trustee for himself. He judges of the necessity of making a forced sale of the property of his debtor, and, when the sale is made, executes title to the purchaser. The power to sell is a matter of contract and the parties are bound to a strict observance of its terms. The books abound in cases wherein the courts have held sales to be void because of material irregularities in the matter of giving notices of such sales.

(b) But, while we recognize the doctrine last mentioned, it is not controlling in the case at bar. Copies of the mortgage and the deed made thereunder were received in evidence. J. S. Williamson testified that three notices of sale were posted in the city of Roswell, and that he had been told that three other such notices had been posted in places outside of Roswell, in the county of Chaves.

The recitals, contained in a deed executed by virtue of a power of sale contained in a mortgage, that the proper notice of sale was given are prima facie proof of such facts as against the parties and privies to the instrument containing the power. 4 Enc. of Evidence, 183, 13 Cyc. 611; 27 Cyc. 1463; Knox v. Gibson (1911) 23 Colo. App.

402, 128 Pac. 470; Williamson v. Mayer, 117 Ala. 253, 23 South. 3; Tew v. Henderson, 116 Ala. 545, 23 South. 128; Washington County R. Co. v. Canadian Colored Cotton Mills Co., 104 Me. 527, 72 Atl. 491, 496; Lunsford v. Speaks, 112 N. C. 608, 17 S'. E. 430; Tyler v. Herring, 67 Miss. 169, 6 South. 840, 19 Am. St. Rep. 263. .

In Empire Ranch & Cattle Co. v. Howell (1912) 22 Colo. App. 389, 125 Pac. 592, the court said that:

"No evidence having been offered by the defendant, tending in any wise to contradict or impeach the recitals in the trustee's deed offered by plaintiff, we must hold that he made sufficient proof of his title to put the defendant on his proof."

The court said in Rucker v. Hyde, 118 Tenn. 358, 100 S. W. 739, 741, that:

"No proof having been introduced to show that the foreclosure sale was not conducted strictly in pursuance of the directions of the trust deed, the recitals in the deed from the trustee to the purchaser at the foreclosure sale are sufficient evidence of such fact."

In Naugher v. Sparks, 110 Ala. 572, 18 South. 45, 46, the court remarked that, in the case then under consideration, the—

"mortgage itself provided the conditions and terms of sale, and authorized the 'auctioneer' to convey the lands, by proper deed, to the purchaser. * * * The deed purports to be in execution of the power granted. We must presume the recitals are prima facie true, against the mortgagor, the grantor of the power, and his privies. In the notes of the case of Tyler v. Herring (Miss.) 19 Am. St. Rep. 297, * * * Mr. Freeman declares the true rule to be 'that the recitals made by the trustee surely must be taken as at least prima facie evidence of the existence of the matters therein stated.' This is the law, as held in many well-considered opinions" (citing authorities.)

The court further remarked that such recitals are only prima facie evidence of the existence of the facts stated, but are not conclusive. In Roe v. Davis (Tex. Civ. App. 1912) 142 S. W. 950, the same doctrine is announced, and the court defended it on the ground that it is not only in harmony with the weight of authority, but necessary and expedient to the security of land titles. In Carico

v. Kling, 11 Colo. App. 349, 53 Pac. 390, which is the leading and pioneer Colorado case on the subject, it was contended by the appellant that the plaintiff in the trial court should have introduced evidence aliunde the deed for the purpose of showing that all the prerequisites mentioned in the trust deed had been complied with. The court held that the recitals were prima facie evidence of the facts, and that the burden of overcoming that evidence was upon the defendant. In Tyler v. Herring, supra, the court said that the true view was that the plaintiff begins and ends with the burden of proof, and that he makes out a prima facie case when he introduces the trustee's deed, it then devolving on the defendant to meet the case thus made.

In the case at bar, the plaintiff made a prima facie case by the introduction of the deed made in pursuance of the power, which recited that the premises were duly advertised for public sale in the manner prescribed by said mortgage deed, and the testimony of the witness Williamson did not destroy that prima facie case, but rather strengthened it. Therefore the court did not err in finding that the notices of sale were given as required by law and the terms of the mortgage, and in not finding that the notices were not so given.

Appellant claims that the court should not have permitted the appellee to show that the mortgagor was present at the sale. We do not deem this assignment of any particular importance. It was a fact which might have had some bearing on the question of the affirmation of the sale by the mortgagor. From what we have said heretofore, it is plain that the mortgagor, by delay or acquiescence, may have affirmed the purchase by the mortgagee. The sale was not void because the mortgagee purchased the premises, assuming that J. S. Williamson was a mortgagee, but voidable only. The burden of avoiding the sale because of that fact was upon appellant.

The court found that the appellant was a purchaser for value but that the recitals, disclosures, and contents of the "mortgagee's deed" were sufficient to put the appellant on inquiry, and that reasonable inquiry would have

led to a knowledge of the superior and equitable rights of those claiming under J. S. Williamson as purchasers. Without setting out the evidence, it is sufficient to say that there is substantial evidence to sustain this finding made by the trial court.

Many other questions are presented by appellant, but are either not properly before us or without merit.

The judgment is therefore affirmed, and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

## ON REHEARING.

HANNA, J.—[**11**] The appellant was granted a rehearing on certain points specified in his motion therefor. Those points are elaborately argued in appellant's motion for rehearing, and we have had the benefit of an oral argument thereon also. The opinion of the court in this case disposed of 12 general propositions involved in the case, but, believing that numerous other points presented by appellant were not well taken, and rather than discuss them at length, we said that they were not meritorious. The rehearing was granted on the ground that we had overlooked several points contained in the motion, only one of which appeared decisive of the cause in the event that it was well taken. We shall consider but one point in the motion, overruling the remainder.

The appellant contends that the power of sale contained in the mortgage was revoked by the death of Mrs. Ovard, who was one of the mortgagors; hence a sale under power did not divest the heirs of Mrs. Ovard's estate, which interest was subsequently purchased by appellant. The trial court found that the property involved in this suit was the separate estate of the father, George T. Ovard, and that finding would be decisive of the proposition now under discussion, were it supported by any substantial evidence. Our search of the record fails to disclose any substantial evidence to support it. However, the question still remains whether the interest which appellant is alleged to have purchased from the heirs of Mrs. Ovard was foreclosed, as against Mrs. Ovard, by the foreclosure proceedings, and that depends upon whether her death re-

voked the power of sale. As we have heretofore said in this case, a mortgage in this state simply constitutes a lien on the property, a security for the debt, and does not pass the legal title to the mortgagee. Decisions of other courts, where the common-law view of mortgages is taken, are much more harmonious as to whether the death of the mortgagor revokes the power of sale contained therein, than in those jurisdictions, like this, where the equitable view of mortgages is taken.

In Jones on Mortgages (7th ed.) at section 1792, the author says:

"As a general rule, the death of the mortgagor does not revoke a power of sale, even though the mortgage is held merely to give a lien on the property. This, being coupled with an interest in the estate, cannot be revoked or suspended by the mortgagor."

At section 1794 of the same volume and work, the author notes a conflict of authority on the proposition, saying:

"In some states, where, by statute or adjudication, a mortgage is regarded as a mere security for debt, passing no title or estate to the mortgagee, a power of sale is regarded as not coupled with an interest, and it is revoked and rendered incapable of execution by the death of the mortgagor. A sale under the power, made after the death of the mortgagor, is void."

In Reeves on Real Property, § 786, the author says:

"Since a power of this kind (of sale) is usually coupled with an interest, it is not, as a general rule, extinguished by the death of its creator."

In Tiffany on Real Property, § 555, it is said that it is necessary to distinguish between the common-law and equitable theories of mortgages in determining the question, and concludes that, where the common-law view of mortgages is taken, the power is coupled with an interest, whereas, where the equitable view is taken, the power cannot be regarded as coupled with an interest.

In Devlin on Real Estate (Deeds) at section 383, it is said, in part:

Cleveland v. Bateman, 21 N. M. 675.

"A mere naked power may be revoked at will, but the rule is that when a power is coupled with an interest it is irrevocable. As powers of sale in mortgages and trust deeds are of this character, it follows that such powers are irrevocable. The power of sale is an essential and valuable part of the security."

At section 385 of the same volume and work, it is said, in part:

"With the exception of Texas and Georgia, there is in the different states a complete unanimity of opinion upon the effect that the death of the mortgagor exercises over a power of sale. As this power is coupled with an interest, no act of the mortgagor can suspend or revoke it. * * * There can be no reason for making the death of the mortgagor an exception. * * * These are the views taken by the authorities, and it may therefore be asserted, as an established proposition, that the death of the mortgagor does not operaate as a revocation of the powers."

Most of the cases cited by the author are those wherein the common-law view of mortgages is taken.

In Johnson v. Johnson, 27 S. C. 309, 3 S. E. 606, 13 Am. St. Rep. 636 (1887), the court held that a power of sale contained in a mortgage was revoked by the death of the mortgagor, because it was not coupled with an interest. In South Carolina, at that time, a mortgage was regarded as a mere security for the debt, as in this jurisdiction. In Frank v. Colonial & U. S. Mortgage Co., 86 Miss. 103, 38 South. 340, 344, 70 L. R. A. 135, 4 Ann. Cas. 54, the court, after reviewing most of the authority on the question, as well as former decisions of that court, held that, notwithstanding that a mortgage in that state was simply security for a debt, the power of sale contained therein was coupled with an interest, hence was not revoked by the death of the mortgagor. The court, in part, said:

"Whether, therefore, the mortgagee or the trustee is esteemed to take, by the conveyance, a legal or equitable estate in the thing conveyed or not, the sounder and better view, manifestly, is the one pointed out by us in the case of Allen v. Alliance Trust Co., [84 Miss. 319, 36 South. 285], supra, to-wit, that the trustee or mortgagee in such instruments is not a mere ordinary agent at all; that the power to sell is based on the consideration on which the contract is bottomed, is part of that security and that contract, and is

hence stipulated for and bought by the beneficiary in the instrument, whether trust deed or mortgage, and is a power coupled with an interest, and hence not revocable by death."

In Reilly v. Phillips, 4 S. D. 604, 57 N. W. 780, 781, the court held, independent of certain statutes of that state which had a bearing on the question, that the power of sale contained in a mortgage was one coupled with an interest, and that the death of the mortgagor did not revoke it. The court said:

"Appellants insist that the rule of these cases (cases cited in support of the rule that the power is coupled with an interest) is not applicable in this jurisdiction, because, under our law, the mortgagor retains the title to the estate mortgaged, contrary to the law prevailing in most of the states whence these decisions come; but we apprehend that, upon principle, that fact ought not to make any difference in respect to the survival of the power. Even in the states where the mortgage is held to convey the legal title to the mortgagee, the transfer is only nominal. It is more of a fiction than a reality. If the mortgagee, who is said to hold the legal title, die, his interest does not pass to his heirs, as real estate. * * * In New York the mortgage does not convey the legal title, and has not, since a very early day; and yet Chancellor Walworth, in Jencks v. Alexander, 11 Paige [N. Y.] 624, says that a power of sale in such a mortgage is a beneficial power; that it is a power coupled with an interest, 'to the extent of the interest of the mortgagee in the premises.' In Wilson v. Troup, 2 Cow. [N. Y.] 236 [14 Am. Dec. 458] the court says: 'The power of the mortgagee to sell the mortgaged premises is undoubtedly a power coupled with an interest.' The power of sale in that state is constantly treated as a power coupled with an interest, and the cases are frequent in which it has been executed after the death of the mortgagor. * * * The quality of the power does not depend upon the general character or legal effect of the instrument in which it is granted, but upon whether or not the power itself is coupled with an interest in the subject concerning which the parties are contracting. It would be difficult to justify the conclusion that in one case the mortgagee had an interest in the subject of the mortgage, and in the other case did not. The purpose of the mortgage, and the rights of the parties as mortgagor and mortgagee, are the same in both cases. * * * We think, both under our statute or without it, the power of sale is one so coupled with an interest that it survives the death of the grantor."

In the case last mentioned, the case of Johnson v. Johnson, cited supra, was distinguished principally on the

ground that there no statute recognized or declared the effect of, or provided a method for the execution of, the power; but we do not deem that fact of sufficient importance to say that the power, therefore, is not one coupled with an interest. In Grandin v. Emmons, 10 N. D. 223, 86 N. W. 723, 725, 54 L. R. A. 610, 88 Am. St. Rep. 684, the identical question involved here was discussed. The court said that, notwithstanding the holding in Johnson v. Johnson, supra, "the almost unanimous voice of authority is the other way," and approved the conclusion reached by the court in Reilly v. Phillips,. cited supra.

See, also, First National Bank of Butte v. Belle Silver & Copper Mining Co., 8 Mont. 32, 19 Pac. 403, 411, where the court said that—

"the mortgagee has an interest in the land mortgaged. He has a lien upon it for the security of his debt, and this will support the power of sale, and so couple it with an interest in the land that it becomes a part of the security, and irrevocable."

In Goldwater v. Hibernia S. & L. Society, 19 Cal. App. 511, 126 Pac. 861, 862, the court said that the power to sell is a part of the. security for the payment of the debt; it conveys no estate or title to the land, simply being a lien upon the property affected by the power, and, "by the execution of the power, the mortgagor has placed the property under the power of the mortgagee to sell to secure the payment of his debt." In White v. Rittenmyer,. 30 Iowa, 268, 270, 271, the court said:

"The interest, which the mortgagee holds, is a lien upon. the land for the debt, which may, by certain proceedings, ripen into a title, or rather, may divest the title of the mortgagor; if the condition of the mortgage be broken some act of the mortgagee is necessary, that he may acquire an indefeasible title—a title which the mortgagor will not be able to defeat by redemption."

In Porter v. Green, 4 Iowa, 571, 574, the court said:

"We have no difficulty, from these authorities, in concluding that, while the mortgage does create a lien upon the property mortgaged, yet that it also operates to transfer to the mortgagee a qualified or conditional estate, which be--

comes void on the payment of the debt, or the performance of the covenant."

From these authorities, we conclude that. the mortgage in the case at bar created a lien upon the property described therein; that the power of sale was coupled with an interest and therefore did not become revoked upon the death of the mortgagor; hence appellant, on this theory, cannot be held to possess any estate in the premises by virtue of a conveyance to him by the heirs of the deceased mortgagor. Our former opinion will therefore be adhered to; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.